FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2018 MAR -7 AM 10:41
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| DORIAN FRANK O'KELLEY, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> WARDEN, Georgia Diagnostic ) <br> Prison, ) <br> ) <br> Respondent. ) <br> ) | CASE NO. CV415-104 |

## O R D E R

In 2005, Petitioner Dorian Frank O'Kelley was convicted and sentenced to death by the Superior Court of Chatham County for the murders of Susan Pittman and her thirteen-year-old daughter, Kimberly Pittman. (Doc. 33, Attach. 5 at 15-16; Doc. 16, Attach. 19 at 2-5.) After the completion of his direct appeal and state habeas court proceedings, Petitioner filed a petition for habeas corpus in this Court, pursuant to 28 U.S.C. § 2254, challenging his conviction and death sentence on a number of grounds. (Doc. 1.) Petitioner has now filed a Motion for Evidentiary Hearing. (Doc. 82.) In his motion, Petitioner asserts that an evidentiary hearing is necessary to develop essential facts to show that the Georgia Supreme Court's proportionality review of his death

sentence was unconstitutional. (Id.) After careful consideration, Petitioner's motion is **DENIED**.[1]

## BACKGROUND

I. <u>FACTUAL HISTORY</u>

The facts of this case were set forth by the Supreme Court of Georgia:

> [S]hortly before midnight on April 10, 2002, O'Kelley and his co-defendant, Darryl Stinski, were observed at a convenience store by two Chatham County police officers. The officers noticed the defendants because they were dressed in black clothing, they carried a black duffle bag that appeared empty, and Stinski had several facial and ear piercings. Shortly after O'Kelley and Stinski left the store, the officers responded to a burglar alarm at a residence within walking distance of the store and discovered a broken window there. The occupant of the residence, who was not home at the time, testified at trial that she returned to find that someone had apparently tried to kick in her back door and had broken a window and bent the curtain rod inside the home. O'Kelley admitted in his first statement to police that he and Stinski went to a residence in order to commit a theft therein on the night in question but fled after the alarm went off.
>
> A few hours later, at approximately 5:30 a.m. on April 11, the same police officers were leaving the convenience store when they spotted a fire in the distance. Rushing to the scene, they found the Pittman residence engulfed in flames. This home was in close proximity to the residence which had been burglarized earlier. In the headlights of the police car, one of the officers again observed O'Kelley and Stinski, this time standing in a wooded area across the street from the burning house. However, they had disappeared by the time the officers exited the vehicle. Once the

---

[1] Accordingly, Respondent's Motion for Ruling on Petitioner's Motion for Evidentiary Hearing (Doc. 85) is **DISMISSED AS MOOT**.

2

fire was extinguished, officials discovered the remains of the victims.

That evening, O'Kelley and Stinski brought a duffle bag to the mobile home where Stinski was staying, and O'Kelley told the group of people present that he and Stinski had stolen items from automobiles in the neighborhood. He also confided in one member of the group that he had burglarized and set fire to the Pittman residence, and he claimed to have slit Ms. Pittman's throat and to have raped Kimberly. O'Kelley then removed from his wallet a tooth in a ziplock bag and stated that he had "busted it out of the little girl's mouth." After O'Kelley and Stinski left the mobile home, the group opened the duffle bag and discovered several items, including compact discs marked with Kimberly's initials and prescription pill bottles containing oxycodone with Ms. Pittman's name and address on the labels. A group member phoned the police and advised them of the bag's contents and O'Kelley's comments. After the contents of the bag were identified by a family member as belonging to the victims, O'Kelley and Stinski were arrested, and a human tooth later determined through DNA evidence to belong to Kimberly was found inside O'Kelley's wallet.

In his second statement to police, O'Kelley confessed to killing Ms. Pittman by repeatedly beating and stabbing her, to beating and stabbing Kimberly, to setting the Pittman residence on fire while Kimberly was still alive, and to taking numerous items from the residence. O'Kelley told police that items stolen from the home and from automobiles in the neighborhood were located in the attic of his house and that he had discarded the clothing and shoes that he was wearing during the murders in a garbage bag on top of an abandoned mobile home near his house. Police located these items as O'Kelley described. Blood on the clothing was identified as Ms. Pittman's, and blood on the shoes was identified as that of both victims.

Four witnesses testified that, early on the day following the murders, they discovered that someone had broken into and removed personal belongings from their automobiles parked in O'Kelley's neighborhood. O'Kelley's fingerprint was found inside one of these vehicles, and the witnesses identified their stolen

3

property from items recovered by the police from O'Kelley's attic.

O'Kelley v. Georgia, 284 Ga. 758, 759-60, 670 S.E.2d 388, 392-93 (2008).

II. PROCEDURAL HISTORY

Petitioner was charged with two counts of malice murder, two counts each of burglary and arson in the first degree, one count of cruelty to children, one count of possession of a controlled substance, one count of possession of a controlled substance with intent to distribute, and five counts of entering an automobile with intent to commit theft. Id. at 758. Petitioner's trial began on October 21, 2005, and he was found guilty on November 3, 2005 of all charges in the indictment with the exception of possession of a controlled substance with intent to distribute. (Doc. 33, Attach. 5 at 15-16.) Five days later, Petitioner was sentenced to death for the murders of Susan and Kimberly Pittman. (Doc. 16, Attach. 19 at 2-5.) At trial, the jury found beyond a reasonable doubt the existence of six statutory aggravating factors:

(1) The murders were committed while Petitioner was engaged in the commission of a burglary;

(2) The murders were committed while Petitioner was engaged in the commission of arson in the first degree;

(3) The murders were outrageously or wantonly vile, horrible, or inhuman in that they involved torture to the victims before death;

4

(4) The murders were outrageously or wantonly vile, horrible, or inhuman in that they involved depravity of the mind of Petitioner;

(5) The murders were outrageously or wantonly vile, horrible, or inhuman in that they involved aggravated battery to the victims before death; and

(6) The murder of Kimberly Pittman was committed while Petitioner was engaged in the commission of another capital felony, the murder of Susan Pittman.

(Id.)

On December 5, 2005, Petitioner filed a motion for a new trial, which he amended on March 6, 2007. (Id. at 11-12; Doc. 16, Attach. 22 at 5-15; Doc. 16, Attach. 23 at 1.) On January 8, 2008, the trial court denied Petitioner's amended motion. (Doc. 21, Attach. 2 at 5-15; Doc. 21, Attach. 3 at 1-8.) The Georgia Supreme Court affirmed Petitioner's convictions and death sentences, although it reversed the sentences for the two counts of first degree arson because those counts should have been merged. O'Kelley, 284 Ga. at 760-61. Pursuant to Georgia law, the Georgia Supreme Court also considered the proportionality of Petitioner's death sentence in light of other capital cases and concluded that his sentence was not excessive or disproportionate. Id. at 770-71. On October 5, 2009, the United States Supreme Court denied Petitioner's petition for writ of certiorari. O'Kelley v. Hall, 558 U.S. 840, rehearing denied, 558 U.S. 1064 (2009).

Accordingly, Petitioner filed a state habeas corpus petition in the Superior Court of Butts County on September 7, 2010. (Doc. 35, Attach. 9.) On April 26, 2011, Petitioner filed an amended petition. (Doc. 36, Attach. 19.) That court conducted evidentiary hearings on August 27-29, 2012 and January 9, 2013. (Doc. 38, Attach. 1 through Doc. 50, Attach. 9.) On September 27, 2013, the state habeas court entered an order denying habeas relief. (Doc. 52, Attach. 8.) On January 27, 2014, Petitioner filed an application for a certificate of probable cause to appeal the denial of habeas corpus relief. (Doc. 53, Attach. 2.) On March 30, 2015, the Georgia Supreme Court denied the application. (Doc. 53, Attach. 6.) Further attempts to appeal were similarly unavailing. See O'Kelley v. Chatman, ___ U.S. ___, 136 S. Ct. 408 (2015).

After filing a 28 U.S.C. § 2254 petition in this Court, Petitioner filed a Motion for Leave to Conduct Discovery. (Doc. 31.) On February 2, 2017, this Court denied that motion. (Doc. 73.) Now, Petitioner has filed a motion requesting an evidentiary hearing to develop facts supporting his claim that the Georgia Supreme Court improperly conducted a proportionality review of his death sentence on direct appeal. (Doc. 82.) In his motion, Petitioner requests the opportunity to present evidence that his death sentence was constitutionally disproportionate in light of his mental illness and the county in which he was

6

sentenced. (Id. at 4-6.) Specifically, Petitioner requests the hearing for the purpose of presenting two witnesses who will offer testimony related to the practices of prosecutors charging defendants with mental illnesses in capital cases. (Id.) Ultimately, Petitioner asserts that the evidence shown during the evidentiary hearing would prove that Petitioner's death sentence was arbitrarily and disproportionally imposed due to his severe mental illness. (Id.)

## ANALYSIS

I. <u>STANDARDS GOVERNING EVIDENTIARY HEARINGS IN FEDERAL HABEAS CORPUS CASES</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the availability of evidentiary hearings in federal habeas cases. AEDPA states that

> [i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

7

> factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). However, petitioners who have shown diligence in pursuing their claims are not precluded from receiving an evidentiary hearing. See Pope v. Sec'y for Dept. of Corr., 680 F.3d 1271, 1291 (11th Cir. 2012). "[O]nce a petitioner has established diligence, a federal court may grant an evidentiary hearing without regard to the strictures of 28 U.S.C. § 2254(e)(2), but only if the petitioner has 'proffer[ed] evidence that, if true, would entitle him to relief.' " Id. at 1291 (quoting Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) (alteration in original)); accord Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). As a result, a "petitioner is not entitled to an evidentiary hearing when his claims are merely 'conclusory allegations unsupported by specifics.' " Boyd v. Allen, 592 F.3d 1274, 1305 (11th Cir. 2010) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

However, even diligent petitioners are not entitled to an evidentiary hearing in all cases. First, the Court is not required to hold an evidentiary hearing when a petitioner seeks

review of a procedurally defaulted claim. See Henry v. Warden, Ga. Diagnostic Prison, 750 F.3d 1226, 1232 (11th Cir. 2014) (finding no entitlement to evidentiary hearing when claim is procedurally defaulted). Generally, a petitioner can overcome procedural default only by showing "both cause for the failure to raise the claims on direct appeal and actual prejudice, or demonstrat[ing] that a 'failure to consider the claims will result in a fundamental miscarriage of justice.'" Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010) (citing Muhammad v. Sec'y, Dep't of Corr., 554 F.3d 949, 957 (11th Cir. 2009)).

Second, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Cullen v. Pinholster, 563 U.S. 170, 185 (2011). As a result, if Petitioner's claims were adjudicated on the merits by a state court, then Petitioner must be able to show that the state court's ruling

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

9

28 U.S.C. § 2254(d); see also Landers v. Warden, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

II. PETITIONER'S REQUEST FOR EVIDENTIARY HEARING

In his motion, Petitioner requests an evidentiary hearing to present evidence explaining that the Georgia Supreme Court's proportionality review of his death sentence was unconstitutional. In response, the Government contends that Petitioner is not entitled to an evidentiary hearing to offer new evidence before this Court. For the following reasons, the Court agrees with the Government and Petitioner is not entitled to an evidentiary hearing.

First, the Court finds that Petitioner's claim is unexhausted and procedurally defaulted. In order to properly exhaust a claim, a petitioner must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971) (alterations and internal quotation marks omitted)). Federal claims must be presented "to the state courts in a manner to alert them that the ruling under review violated a federal

constitutional right." Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 849-50 (11th Cir. 2008) (citing Duncan, 513 U.S. at 365-66). Notably, this requirement "is not satisfied 'merely' if the petitioner presents the state court with 'all the facts necessary to support the claim' or even if a 'somewhat similar state-law claim was made.'" Id. at 850 (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004)).

In this case, Petitioner's challenge to the Georgia Supreme Court's proportionality review is being raised for the first time before this Court. In fact, this is the first time that Petitioner is even attempting to develop facts to support his claim that his sentence was disproportional. At no point on direct appeal or through his state habeas proceeding did Petitioner argue that his sentence was unreasonably disproportionate when compared to the sentences of other similarly situated defendants. More importantly, Petitioner never argued that the actual method used by the Georgia Supreme Court to conduct its proportionality review of his death sentence was improper.

In defense of his claim, Petitioner contends that on direct appeal he was under no duty to raise a proportionality claim or develop facts to support his claim because the Georgia Supreme Court is mandated under Georgia law to consider both the defendant and the crime when conducting a proportionality review of a death sentence. See O.C.G.A. § 17-10-35(c)(3). Further, Petitioner maintains that he was barred from raising any

proportionality claim in his state habeas proceeding because any such claim would have been precluded under the doctrine of res judicata. In his view, his federal habeas petition is the first opportunity that he is able to develop facts to support his claim that his death sentence was disproportionate and that the Georgia Supreme Court improperly reviewed his death sentence.

After careful review, the Court is unpersuaded by Petitioner's argument, which wholly misses the point. While Petitioner may have been barred in his state habeas proceeding from challenging the state's ruling that his sentence was proportional to other similarly situated cases, Petitioner was not barred from challenging the way in which the Georgia Supreme Court conducted its review. A challenge to the method that the court used to review his death sentence is fundamentally different than a challenge that his sentence was disproportionate when compared to the sentences of similarly situated defendants who committed similar crimes. At no point during his state habeas proceedings did Petitioner raise his challenge to the method used by the Georgia Supreme Court. As a result, the state courts were never given an opportunity to review or correct any potential error in the Georgia Supreme Court's review. Because Petitioner is challenging the way the Georgia Supreme Court conducted its review, but failed to provide the State with the opportunity to review the method used

to conduct that proportionality review, Petitioner's claim remains unexhausted.

Not only is Petitioner's claim unexhausted, but his claim is also procedurally defaulted. Federal courts "may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempt at exhaustion would be futile." Turner v. Crosby, 339 F.3d 1247, 1281 (11th Cir. 2003) (quoting Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999)). Pursuant to Georgia law, claims that are not properly raised in a state habeas petition are waived and considered to be procedurally defaulted. O.C.G.A. § 9-14-51. In this case, Petitioner did not raise any challenge in the state court to the method used by the Georgia Supreme Court in conducting its proportionality review. While it is possible to overcome procedural default by making a certain showing of prejudice, Petitioner has made no such argument in this case. See Bailey, 172 F.3d at 1302 ("A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."). As a result, Petitioner has waived his claim and cannot be given an opportunity to raise it for the first time before this Court.

13

Even if the Court were to consider the merits of Petitioner's claims, however, Petitioner would still be unable to show that he is entitled to an evidentiary hearing. Under 28 U.S.C. § 2254(d), a petitioner is typically not permitted to admit new evidence in federal court to refute a claim decided on the merits by a state court. Pinholster, 563 U.S. at 185. Instead, the petitioner is limited to the record developed at the state court. Id. A petitioner may be able to circumvent this requirement, however, if he is able to prove that the state court decision was either contrary to or involved an unreasonable application of clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d); Pinholster, 563 U.S. at 185-86.

In this case, Petitioner does not make any argument that the Georgia Supreme Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court. As a result, this Court must consider whether the Georgia Supreme Court's proportionality review violated clearly established federal law. After careful review, Petitioner has not satisfied this burden and, as a result, is not entitled to an evidentiary hearing.

In his briefing, Petitioner contends that the Georgia Supreme Court's review violated clearly established law as detailed in Furman v. Georgia, 408 U.S. 238 (1972), and Gregg v. Georgia, 428 U.S. 153 (1976). In Furman, the Supreme Court of the United States required that states allowing capital punishment implement procedures to limit the arbitrary application of the death penalty. 408 U.S. at 310. In response to Furman, many states implemented procedures ensuring that capital punishment was not arbitrarily applied. Gregg, 428 U.S. at 179-80. In Gregg, the United States Supreme Court reviewed Georgia's newly implemented procedures for ensuring that the death penalty was not arbitrarily applied. Id. at 196-98. After reviewing the state's procedures that created "bifurcated proceedings, [a] limited number of capital crimes, the requirement that at least one aggravating circumstance be present, and the consideration of mitigating circumstances," six justices upheld Georgia's death penalty procedures. Pulley v. Harris, 465 U.S. 37, 45 (1984) (discussing the holding and reasoning of Gregg). In addition, at least three justices suggested that the proportionality review on direct appeal was an important additional safeguard against the arbitrary implementation of the death penalty in Georgia. Gregg, 428 U.S. at 197. Based on the holding in Gregg, Petitioner maintains that the Georgia Supreme Court violated clearly established federal

law when it failed to properly conduct a proportionality review of his death sentence.

However, this Court does not agree. As a starting point, 28 U.S.C. § 2254(d) is a "difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Pinholster, 563 U.S. at 181 (internal citations and quotations omitted). Ultimately, a petitioner can only meet this high standard "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." Pope, 752 F.3d at 1262 (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (internal quotations and alterations omitted)). When reviewing the Georgia Supreme Court's determination, this Court must consider whether the Georgia Court's proportionality review was "so lacking in justification . . . and . . . beyond any possibility of fair-minded disagreement." Id. (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

In Gregg, the Supreme Court of the United States considered the procedures Georgia had in place to protect defendants from the arbitrary imposition of the death penalty. 428 U.S. at 196-98. However, the court never decided that Georgia was required

to conduct a proportionality review. See id.; see also Pulley, 465 U.S. at 45 ("While the opinion of Justices Stewart, Powell and Stevens [in Gregg] suggested that some form of meaningful appellate review is required . . . those Justices did not declare that comparative review was so critical that without it the Georgia statute would not have passed constitutional muster."). In fact, the Supreme Court of the United States has been clear that there is no constitutional right to a proportionality review. Pulley, 465 U.S. at 44. Even if a proportionality review was constitutionally required, however, the Supreme Court of the United States has certainly never clearly defined any specific criteria that a lower reviewing court must consider.

In light of Pulley and Gregg, it is clear that the Georgia Supreme Court's review did not violate any clearly established federal law. The law mandates only that states have certain procedures in place to ensure that capital defendants are not arbitrarily given the death penalty. Furman, 408 U.S. at 310. In this case, the Georgia Supreme Court carefully considered the heinous nature of Petitioner's crimes and found that other similar cases resulted in a death sentence. That review did not violate any clearly established federal law. Because Petitioner

17

cannot overcome the hurdle created by § 2254(d), Petitioner is not entitled to an evidentiary hearing on this claim.[2]

**CONCLUSION**

For the foregoing reasons, Petitioner is not entitled to an evidentiary hearing to further develop any claim that the Georgia Supreme Court improperly considered the proportionality of his death sentence.[3] As a result, Petitioner's Motion for Evidentiary Hearing (Doc. 82) is **DENIED**. In addition, Respondent's Motion for Ruling on Petitioner's Motion for Evidentiary Hearing (Doc. 85) is **DISMISSED AS MOOT**.

SO ORDERED this 7th day of March 2018.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] Because this Court has found that Petitioner does not meet the requirements of 2254(d)(1), the Court does not need to consider whether Petitioner could satisfy the requirements detailed in 28 U.S.C. § 2254(e)(2). See French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1265 n.3 (11th Cir. 2015).

[3] In his briefing, Petitioner claims that he is not requesting that this Court conduct a new proportionality review of his sentence. However, some of the language in his briefing suggests otherwise. To the extent that Petitioner is hoping that this Court will essentiality conduct a second proportionality review of Petitioner's sentence, this request is denied. Federal district courts are not the appropriate forum to conduct proportionality reviews. Mills v. Singletary, 161 F.3d 1273, 1282 (11th Cir. 1998) (concluding that petitioner's claims were more appropriately characterized as a request for a proportionality review, which the "district court correctly refused to entertain").