DORIAN FRANK O'KELLEY,                )
                                      )
        Petitioner,                   )
                                      )
v.                                    )    CASE NO. CV415-104
                                      )
WARDEN, GDCP,                         )
                                      )
        Respondent.                   )
                                      )

## O R D E R

In 2005, Petitioner Dorian Frank O'Kelley was convicted and sentenced to death by the Superior Court of Chatham County for the murders of Susan Pittman and her thirteen-year-old daughter, Kimberly Pittman. (Doc. 33, Attach. 5 at 15-16; Doc. 16, Attach. 19 at 2-5.) After the completion of his direct appeal and state habeas court proceedings, Petitioner filed a petition for habeas corpus in this Court, pursuant to 28 U.S.C. § 2254, challenging his conviction and death sentence on a number of grounds. (Doc. 1.) Currently before the Court are the parties' briefings on procedural default, cause and prejudice, and the fundamental miscarriage of justice.[1] (Doc. 87; Doc. 89; Doc. 92.) After a careful review of the parties' briefs and the record, Petitioner

---

[1] After careful consideration, Respondent's Motion for Leave to File Excess Pages (Doc. 88) is **GRANTED.** The Court will consider Respondent's excess pages within this order.

is **DIRECTED** that he may brief claims in his upcoming merits brief in accordance with the instructions in this order.[2]

## BACKGROUND

I.   FACTUAL HISTORY

The facts of this case were set forth by the Supreme Court of Georgia:

> [S]hortly before midnight on April 10, 2002, O'Kelley and his co-defendant, Darryl Stinski, were observed at a convenience store by two Chatham County police officers. The officers noticed the defendants because they were dressed in black clothing, they carried a black duffle bag that appeared empty, and Stinski had several facial and ear piercings. Shortly after O'Kelley and Stinski left the store, the officers responded to a burglar alarm at a residence within walking distance of the store and discovered a broken window there. The occupant of the residence, who was not home at the time, testified at trial that she returned to find that someone had apparently tried to kick in her back door and had broken a window and bent the curtain rod inside the home. O'Kelley admitted in his first statement to police that he and Stinski went to a residence in order to commit a theft therein on the night in question but fled after the alarm went off.

> A few hours later, at approximately 5:30 a.m. on April 11, the same police officers were leaving the convenience store when they spotted a fire in the distance. Rushing to the scene, they found the Pittman residence engulfed in flames. This home was in close proximity to the residence which had been burglarized earlier. In the headlights of the police car, one of the officers again observed O'Kelley and Stinski, this time standing in a wooded area across the street from the burning house. However, they had disappeared by the time the officers exited the vehicle. Once the

---

[2]   Accordingly, Respondent's Motion Requesting Ruling on Procedural Issues (Doc. 103) is **GRANTED.**

2

fire was extinguished, officials discovered the remains of the victims.

That evening, O'Kelley and Stinski brought a duffle bag to the mobile home where Stinski was staying, and O'Kelley told the group of people present that he and Stinski had stolen items from automobiles in the neighborhood. He also confided in one member of the group that he had burglarized and set fire to the Pittman residence, and he claimed to have slit Ms. Pittman's throat and to have raped Kimberly. O'Kelley then removed from his wallet a tooth in a ziplock bag and stated that he had "busted it out of the little girl's mouth." After O'Kelley and Stinski left the mobile home, the group opened the duffle bag and discovered several items, including compact discs marked with Kimberly's initials and prescription pill bottles containing oxycodone with Ms. Pittman's name and address on the labels. A group member phoned the police and advised them of the bag's contents and O'Kelley's comments. After the contents of the bag were identified by a family member as belonging to the victims, O'Kelley and Stinski were arrested, and a human tooth later determined through DNA evidence to belong to Kimberly was found inside O'Kelley's wallet.

In his second statement to police, O'Kelley confessed to killing Ms. Pittman by repeatedly beating and stabbing her, to beating and stabbing Kimberly, to setting the Pittman residence on fire while Kimberly was still alive, and to taking numerous items from the residence. O'Kelley told police that items stolen from the home and from automobiles in the neighborhood were located in the attic of his house and that he had discarded the clothing and shoes that he was wearing during the murders in a garbage bag on top of an abandoned mobile home near his house. Police located these items as O'Kelley described. Blood on the clothing was identified as Ms. Pittman's, and blood on the shoes was identified as that of both victims.

Four witnesses testified that, early on the day following the murders, they discovered that someone had broken into and removed personal belongings from their automobiles parked in O'Kelley's neighborhood. O'Kelley's fingerprint was found inside one of these vehicles, and the witnesses identified their stolen

property from items recovered by the police from
O'Kelley's attic.

O'Kelley v. Georgia, 284 Ga. 758, 759-60, 670 S.E.2d 388, 392-93
(2008).

II.  PROCEDURAL HISTORY

Petitioner was charged with two counts of malice murder,
two counts of burglary in the first degree, two counts of arson
in the first degree, one count of cruelty to children, one count
of possession of a controlled substance, one count of possession
of a controlled substance with intent to distribute, and five
counts of entering an automobile with intent to commit theft.
Id. at 758; 670 S.E.2d at 391. Petitioner's trial began on
October 21, 2005, and he was found guilty on November 3, 2005 of
all charges in the indictment with the exception of possession
of a controlled substance with intent to distribute. (Doc. 33,
Attach. 5 at 15-16.) Five days later, Petitioner was sentenced
to death for the murders of Susan and Kimberly Pittman. (Doc.
16, Attach. 19 at 2-5.) At trial, the jury found beyond a
reasonable doubt the existence of six statutory aggravating
factors:

> (1)  The murders were committed while Petitioner was
>       engaged in the commission of a burglary;
>
> (2)  The murders were committed while Petitioner was
>       engaged in the commission of arson in the first
>       degree;

(3)    The murders were outrageously or wantonly vile,
       horrible, or inhuman in that they involved
       torture to the victims before death;

(4)    The murders were outrageously or wantonly vile,
       horrible, or inhuman in that they involved
       depravity of the mind of Petitioner;

(5)    The murders were outrageously or wantonly vile,
       horrible, or inhuman in that they involved
       aggravated battery to the victims before death;
       and

(6)    The murder of Kimberly Pittman was committed
       while Petitioner was engaged in the commission of
       another capital felony, the murder of Susan
       Pittman.

(Id.)

On December 5, 2005, Petitioner filed a motion for a new
trial (Id. at 11-12), which he amended on March 6, 2007 (Doc.
16, Attach. 22 at 5-15; Doc. 16, Attach. 23 at 1.) On January 8,
2008, the trial court denied Petitioner's amended motion. (Doc.
21, Attach. 2 at 5-15; Doc. 21, Attach. 3 at 1-8.) The Georgia
Supreme Court affirmed Petitioner's convictions and death
sentences, although it reversed the sentences for the two counts
of first degree arson because those counts should have been
merged. O'Kelley, 284 Ga. at 760-61. On October 5, 2009, the
United States Supreme Court denied Petitioner's petition for
writ of certiorari. O'Kelley v. Hall, 558 U.S. 840, rehearing
denied, 558 U.S. 1064 (2009).

Accordingly, Petitioner filed a state habeas corpus
petition in the Superior Court of Butts County on September 7,

5

2010. (Doc. 35, Attach. 9.) On April 26, 2011, Petitioner filed an amended petition. (Doc. 36, Attach. 19.) That state court conducted evidentiary hearings on August 27-29, 2012 and January 9, 2013. (Doc. 38, Attach. 1 through Doc. 50, Attach. 9.) On September 27, 2013, the state habeas court entered an order denying habeas relief. (Doc. 52, Attach. 8.) On January 27, 2014, Petitioner filed an application for a certificate of probable cause to appeal the denial of habeas corpus relief. (Doc. 53, Attach. 2.) On March 30, 2015, the Georgia Supreme Court denied the application. (Doc. 53, Attach. 6.) Further attempts to appeal were similarly unavailing. See O'Kelley v. Chatman, ___ U.S. ___, 136 S. Ct. 408 (2015).

After filing a 28 U.S.C. § 2254 petition in this Court, Petitioner has since filed a Motion for Leave to Conduct Discovery (Doc. 31) and Motion for Evidentiary Hearing (Doc. 82). After thorough review, this Court denied both of Petitioner's requests. (Doc. 73; Doc. 86.) Now, the parties have filed their briefing that details issues of procedural default, cause and prejudice, and the miscarriage of justice. (Doc. 87; Doc. 89; Doc. 92.) The Court must now determine whether any of Petitioner's claims are procedurally defaulted and, if so, whether there is any showing of cause and prejudice or a miscarriage of justice that would excuse that default. If the Court finds that any of Petitioner's claims are procedurally

defaulted with nothing to excuse that default, Petitioner will not be permitted to brief those claims on the merits.

**ANALYSIS**

I.   STANDARD OF REVIEW

Federal courts are generally not permitted to review claims raised in a federal habeas petition that are procedurally defaulted. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). "[W]hether a particular claim is subject to the doctrine of procedural default . . . is a mixed question of fact and law." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). There are two general ways in which procedural default can arise to bar a petitioner's claims from federal court review. Bailey, 172 F.3d at 1302-03.

First, federal courts are precluded from reviewing "a state court's rejection of a federal constitutional claim on procedural grounds . . . if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd, 250 F.3d at 1313 (citing Coleman v. Thompson, 501 U.S. 722, 729–30, 111 S. Ct. 2546, 2553 (1991)). To determine whether a state court ruling was based on an independent and adequate state law ground, courts employ a three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest

solidly on state law grounds, and may not be
"intertwined with an interpretation of federal law."
Finally, the state procedural rule must be adequate;
*i.e.,* it must not be applied in an arbitrary or
unprecedented fashion.

Id. (quoting Card v. Dugger, 911 F.2d 1494, 1516 (11th Cir.

1990)). Typically, state court procedural rules are found to be

adequate if they are "firmly established and regularly

followed." Walker v. Martin, 562 U.S. 307, 316, 131 S. Ct. 1120,

1127 (2011) (internal citation omitted).

In addition, claims are typically procedurally defaulted

and precluded from federal review when a petitioner fails to

properly exhaust his claims in the underlying state court

proceedings. 28 U.S.C. § 2254(b)(1)(A); see also Bailey, 172

F.3d at 1302 ("A state habeas corpus petitioner who fails to

raise his federal claims properly in state court is procedurally

barred from pursuing the same claim in federal court absent a

showing of cause for and actual prejudice from the default."

(citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497,

2506-07 (1977))). "Exhaustion requires that 'state prisoners

must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the

State's established appellate review process.' " Mason v. Allen,

605 F.3d 1114, 1119 (11th Cir. 2010) (quoting O'Sullivan v.

Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999)). The

Supreme Court of the United States has recently explained that

the "exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.' " <u>Davila v. Davis</u>, \_\_\_U.S.\_\_\_, 137 S. Ct. 2058, 2064 (2017) (quoting <u>Rose v. Lundy</u>, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203 (1982) (internal quotation marks omitted)).

As part of the requirement that a petitioner must fully exhaust his claims in the underlying state court, a petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.' " <u>French v. Warden, Wilcox State Prison</u>, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (quoting <u>Kelley v. Sec'y Dept. of Corr.</u>, 377 F.3d 1317, 1344-45 (11th Cir. 2004)). Accordingly, a petitioner cannot "scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." <u>Kelley</u>, 377 F.3d at 1344-45 (internal quotation omitted).

"[T]he teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001). While federal courts are

permitted to dismiss habeas petitions that contain unexhausted claims to allow proper exhaustion of those claims in the state court, federal courts are not required to do so "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998). In other words, "[w]here a return to state court would be futile—because the petitioner's claims would clearly be barred by state procedural rules—a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." Hittson v. GDCP Warden, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) (quoting Snowden, 135 F.3d at 736 (internal quotations omitted)).

Although federal courts are typically prevented from considering claims that are deemed to be procedurally defaulted by a state court or not properly exhausted, a petitioner may be able to overcome the procedural default of his claim to allow federal court review in certain limited circumstances. First, the United States Supreme Court has provided that "[a] state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.' " Davila, ___U.S.___, 137 S. Ct. at 2064-65 (quoting Wainwright, 433 U.S.

at 84, 97 S. Ct. at 2505; <u>Coleman</u>, 501 U.S. at 750, 111 S. Ct. at 2565). Federal courts have found that "[c]ause exists if there was 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.' " <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)). This external factor to the defense can be shown when there is "evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." <u>Id.</u> In addition to establishing cause, the petitioner must be able to establish prejudice. <u>Henderson v. Campbell</u>, 353 F.3d 880, 882 (11th Cir. 2003). A petitioner can make this showing by establishing that "there is at least a reasonable probability that the result of the proceeding would have been different" had the constitutional violation not occurred. <u>Id.</u>

In addition to establishing both cause and prejudice, procedural default can be excused if the court finds that enforcing the procedural default would result in a fundamental miscarriage of justice. Typically, this exception only "applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him."

11

*Mize*, 532 F.3d at 1190 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 851, 867 (1995)). In the death penalty context, however, this exception applies if the petitioner can show " 'by clear and convincing evidence' that no reasonable juror would have found him eligible for the death penalty in light of the new evidence." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559-60, 118 S. Ct. 1489, 1493 (1998) (quoting <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348, 112 S. Ct. 2523, 2523 (1992)).

II. <u>Petitioner's § 2254 Petition</u>

In his petition, Petitioner raises nine different general claims seeking habeas relief in this Court. (Doc. 1.) These claims include:

| | |
|---|---|
| Claim I: | Ineffective Assistance of Counsel |
| Claim II: | Prosecutorial Misconduct |
| Claim III: | Juror Misconduct |
| Claim IV: | Trial Court Error |
| Claim V: | Conviction Improperly Based on Misleading Evidence |
| Claim VI: | Improper Jury Instructions |
| Claim VII: | Arbitrary and Disproportionate Death Sentence |
| Claim VIII: | Challenge to Georgia's Method of Lethal Injection |
| Claim IX: | Challenge to the Execution of the Mentally Ill |

(Doc. 1 at 4-40.) Within these claims, Petitioner alleges a variety of errors that occurred during the underlying state court proceedings, which, in his view, entitles him to habeas relief. (<u>Id.</u>)

In its current briefing before the Court, Respondent contends that this Court is unable to reach the merits of many of Petitioner's claims because the claims are procedurally defaulted and precluded from federal court review. (Doc. 89.) Respondent contends that Petitioner's claims are procedurally defaulted because Petitioner either failed to properly exhaust his claims in the underlying state court or his claims were found to be procedurally defaulted by the state habeas court. (Id.) In response, Petitioner purports that Respondent's assessment of his claims is incorrect and that many of the claims are not procedurally defaulted. (Doc. 87; Doc. 92.) Even if some of his claims are procedurally defaulted, however, Petitioner contends that the procedural default can be excused by either the ineffective assistance of his trial counsel, or the state's suppression of evidence in this case. (Id.) Because the parties heavily dispute the alleged procedural default of many of Petitioner's claims, the Court will conduct a claim by claim analysis of the parties' positions in order to determine which claims may be briefed on the merits.

A. Abandoned Claims

As an initial matter, Petitioner has expressly abandoned his intent to pursue Claim VII and Claim VIII. (Doc. 92 at 5.) Because Petitioner has abandoned these claims, the Court will

not consider any of Respondent's arguments that these claims are procedurally defaulted. Petitioner will not be permitted to brief these claims in his upcoming merits briefs.

## B. Claim I: Ineffective Assistance of Counsel

In his § 2254 petition, Petitioner alleges 26 different ways in which his trial counsel was ineffective at trial. (Doc. 1 at 7-13.) In its briefing on procedural default, Respondent contends that this Court should not consider many of Petitioner's ineffective assistance of counsel claims on the merits because those claims are either procedurally defaulted or improperly pled. (Doc. 89.) After careful review of the record and the arguments made by both parties, the Court finds that Petitioner will only be permitted to brief some of his ineffective assistance of counsel claims. The Court will begin with a discussion of Petitioner's claims that are not properly before the Court.

### 1. Claims that are unexhausted

In its briefing, Respondent first contends that many of Petitioner's ineffective assistance claims are procedurally defaulted because Petitioner failed to properly exhaust those claims in the underlying state court proceeding. (Id. at 17-21.) Specifically, Respondent contends that Petitioner failed to exhaust many of his claims by raising those claims in his

application for Certificate of Probable Cause ("CPC application") filed with the Georgia Supreme Court. (Id.) Respondent alleges that Georgia Supreme Court Rule 22 requires petitioners to raise all claims in a CPC application and that the failure to do so results in abandonment of those claims. (Id. at 12-15.) Because Petitioner failed to properly allege many of his claims in the CPC application, Respondent contends that these claims are unexhausted and, therefore, procedurally defaulted under Rule 22. (Id. at 17-21.)

For his part, Petitioner argues that his claims are not procedurally defaulted due to his failure to raise those claims in his CPC application. Petitioner alleges that Rule 22 dictates how briefs should be filed with the Georgia Supreme Court, not CPC applications. (Doc. 87 at. 18-19.) Even if the rule did apply, however, Petitioner contends that Rule 22 cannot constitute an independent and adequate state law basis for procedural default because no underlying state court reviewing Petitioner's claims relied on Rule 22 to find that his claims were procedurally defaulted. (Id. at 19-20.) More importantly, Petitioner contends that even if Rule 22 did apply, the Georgia Supreme Court conducted a thorough review of the entire record in this case, including all of his claims raised in his initial state habeas petition, when reviewing his CPC application. (Doc.

92 at 4.) Accordingly, Petitioner contends that his claims were properly exhausted and are now properly before the Court for review. (Id.)

After careful consideration, the Court finds that Petitioner should have raised his claims in his CPC application in order to properly exhaust his claims in the state court. Exhaustion requires that a petitioner must "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim.' " Kelley, 377 F.3d at 1344 (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S. Ct. 509, 513 (1971)). Additionally, "[t]o ensure exhaustion, petitioners must present their claims . . . throughout 'one complete round of the State's established appellate review process.' " Id. at 1345 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999)). In Georgia, the appellate review process requires that a petitioner file a CPC application with the Georgia Supreme Court. Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (holding that "[the petitioner's] failure to petition the Georgia Supreme Court for a certificate of probable cause means that [the petitioner] failed to exhaust all of his available state remedies").

In this case, Petitioner did file a CPC application with the Georgia Supreme Court. (Doc. 53, Attach. 2.) That CPC application, however, did not mention many of the ineffective assistance of counsel claims that Petitioner now argues should be considered by this Court. (Id.) In his briefing, Petitioner suggests that simply filing a CPC application is sufficient to satisfy the mandate that the state courts should be given one full opportunity to address his claims. This Court wholly disagrees. First, it is difficult to reconcile that a petitioner would be required to file a CPC application with the Georgia Supreme Court in order to exhaust all of his claims, but not be required to detail all of his claims in that CPC application for the Georgia Supreme Court's review. In this Court's view, Petitioner was plainly required to detail all of his claims in his CPC application in order to properly exhaust his claims.

While Petitioner asserts that the premise that a state habeas petitioner must raise all of his claims in a CPC application "is not well-settled and . . . is based on misconstruction of Georgia law" (Doc. 87 at 8) the Eleventh Circuit has reached a similar conclusion to this Court's finding in Hittson v. GDCP Warden, 759 F.3d 1210 (11th Cir. 2014). In Hittson, the Eleventh Circuit provided that "[b]ecause Georgia prisoners are required to apply for a CPC [application] before

they have exhausted their state remedies, . . . claims not in
[the petitioner's] CPC application are unexhausted." Id. at
1231-31 n. 23. Although the Eleventh Circuit did not engage in
an extensive discussion about a petitioner's obligation to brief
claims in a CPC application, this Court sees no reason to
deviate from the Eleventh Circuit's guidance.

Additionally, the Court finds that the parties' discussion
about Rule 22 of the Georgia Supreme Court is irrelevant in this
analysis. Regardless of whether Rule 22 applies to briefs or CPC
applications, the law plainly states that petitioners must
provide states with the opportunity to fully assess the nature
of their claims throughout at least one full round of state
proceedings. Mason, 605 F.3d at 1119. By not raising his claims
for the Georgia Supreme Court's review, Petitioner denied the
court the opportunity to fully assess the merits of those
claims. Therefore, his claims not raised in his CPC application
are unexhausted. This Court does not need to determine whether
Rule 22 constitutes an independent and adequate state law which
a lower court determined constituted a procedural default of
Petitioner's claims because this Court has found that Petitioner
failed to exhaust his claims. There is a fundamental difference
between a claim that a lower court finds to be procedurally
defaulted based on an independent and adequate state law and the

failure of a petitioner to even raise his claims for the state court's consideration.

In this case, Petitioner's claims are procedurally defaulted because he did not properly exhaust his claims. As discussed previously, this Court is permitted to treat unexhausted claims as procedurally defaulted if returning the claims to the state court would be "futile." Hittson, 759 F.3d at 1260 n.56. In this case, the Court concludes that all of Petitioner's claims not appropriately raised in his initial CPC application would be barred from the state court's review under O.C.G.A. § 9-14-52. Pursuant to O.C.G.A. § 9-14-52(b), a petitioner has 30 days from the date in which a state habeas court denies relief to file a CPC application with the Georgia Supreme Court. Because Petitioner is well outside of this 30-day period and has already filed a CPC application, dismissing Petitioner's claims in order to allow Petitioner to raise those claims in a subsequent CPC application would be futile. Accordingly, this Court finds that Petitioner's claims not previously raised in his CPC application are unexhausted and, therefore, procedurally defaulted.

Petitioner attempts to save his claims by arguing that the Georgia Supreme Court actually did review all of his claims when considering his CPC application even though he did not expressly

raise those claims in his application. (Doc. 92 at 4.) In support of his position, Petitioner cites Redmon v. Johnson, 302 Ga. 763, 809 S.E.2d 468 (2018) and Wilson v. Warden, 834 F.3d 1227 (11th Cir. 2016). In these cases, the courts detail the thorough review process used by the Georgia Supreme Court to consider the merits of a CPC application. Redmon, 302 Ga. at 764, 809 S.E.2d at 469-70; Wilson, 834 F.3d at 1233. These opinions provide that, although the Georgia Supreme Court may summarily deny CPC applications, the court's general practice is to have access to the entire habeas record and assign staff members to consider the merits of the petitioner's arguments. Redmon, 302 Ga. at 764, 809 S.E.2d at 469-70; Wilson, 834 F.3d at 1233. Based on this review process, Petitioner argues that the Georgia Supreme Court reviews all of a petitioner's potential meritorious claims even though those claims are not expressly provided in the CPC application. (Doc. 92 at 4.)

Petitioner's argument, however, is based on a flawed understanding of the opinions in Redmon and Wilson. Contrary to Petitioner's assertions, neither the Redmon Court nor the Wilson Court ever states that the Georgia Supreme Court considers potential arguments that a petitioner fails to raise in a CPC application. See Redmon, 302 Ga. at 764, 809 S.E.2d at 469-70; Wilson, 834 F.3d at 1233. In fact, in this Court's view, both

opinions undermine Petitioner's position. First, the <u>Wilson</u> Court provided that "the Georgia Supreme Court thoroughly reviews the evidence and <u>the petitioner's arguments</u> before denying an application for a certificate of probable cause." 834 F.3d at 1233 (emphasis added). Moreover, in <u>Redmon</u>, the court expressly provided that staff attorneys are assigned to draft legal memoranda for each case to address "the arguments <u>presented in the application</u>, and the factual and legal merits of each argument." 302 Ga. at 764, 809 S.E.2d at 470 (emphasis added). While both opinions provide that the Georgia Supreme Court has access to the entire habeas record, both opinions also clarify that the Georgia Supreme Court does not conduct a review of every theoretical argument that could have been raised in a CPC application. <u>Redmon</u>, 302 Ga. at 764, 809 S.E.2d at 469-70; <u>Wilson</u>, 834 F.3d at 1233. Rather, both opinions suggest that the Georgia Supreme Court bases its consideration of a petitioner's CPC application on the arguments raised in the application. <u>Redmon</u>, 302 Ga. at 764, 809 S.E.2d at 469-70; <u>Wilson</u>, 834 F.3d at 1233.

Not only is Petitioner unable to offer any legal support for his theory that the Georgia Supreme Court reviewed his claims not raised in his CPC application, but Petitioner's argument is also illogical. With limited resources, it is

unlikely that the Georgia Supreme Court would peruse the entire habeas record in search of claims that a petitioner did not feel were worthy of inclusion in his CPC application. Rather, as noted in Redmon, the Georgia Supreme Court conducts a thorough review of claims properly raised by the petitioner in the CPC application. 302 Ga. at 764, 809 S.E.2d at 469-70. Because Petitioner did not raise many of his claims in his CPC Application, the Georgia Supreme Court did not have the opportunity to properly consider those claims. As previously discussed, this Court is precluded from reviewing claims that the Georgia Supreme Court did not have the opportunity to properly consider.

On a final note, Petitioner argues that his claims have been properly exhausted because Petitioner incorporated his claims by reference in his CPC application.[3] (Doc. 87 at 17.) After careful consideration, the Court rejects Petitioner's argument. As previously noted, Petitioner is mandated to properly raise his claims so that the underlying state court can fully consider the merits of each claim on review. Kelley, 377

_____

[3] Petitioner incorporated his previous claims through a footnote in his CPC application. (Doc. 53, Attach. 2 at 5.) In its entirety, the footnote provides "Mr. O'Kelley does not abandon any of the claims he has previously raised. Due to page constraints, many issues have not been fully expounded upon, but Mr. O'Kelley incorporates by this reference all claims raised in his Petition and Amended Petition, Motions, Pleadings and Evidentiary Hearing." (Id.)

F.3d at 1344. A reviewing court is unable to fully assess claims that have simply been incorporated by reference. Moreover, Petitioner has not provided any legal support for his assertion that incorporating his claims by reference fulfills his obligation to raise his claims within his CPC application. In this Court's view, Petitioner's footnote is an improper attempt to preserve claims without allowing the underlying state court a full and fair opportunity to review the merits of his claims. Accordingly, this Court finds that Petitioner's attempt to incorporate his claims by reference is insufficient.

Despite Petitioner's best efforts to work around his failure to raise his claims in his CPC application, this Court concludes that any claim Petitioner failed to properly allege in his CPC application is unexhausted and, therefore, procedurally defaulted. The claims that are unexhausted due to Petitioner's failure to properly allege those claims in his CPC application include:

> (b) Trial counsel failed to adequately monitor the conditions of Petitioner's confinement by the State before and during trial and failed to request for amelioration of these conditions. The conditions under which Petitioner was held negatively affected his mental health, his relationship with his trial counsel, and his ability to assists in his defense;[4]

---

[4] For clarity, the Court has retained the lettering system used by Petitioner in his initial § 2254 petition.

(c)  Trial counsel failed to ensure that Petitioner's
     mental health problems were adequately and
     effectively treated while he was confined by the
     State pre-trial and during Petitioner's trial.
     This failure on counsel's part detrimentally
     affected their professional relationship with
     Petitioner, as well as the jury's perception of
     Petitioner;

(d)  Trial counsel failed to adequately litigate in
     pretrial proceedings, at trial, and on appeal,
     the issue of the voluntariness of Petitioner's
     statements to law enforcement agents by, inter
     alia, failing to incorporate psychiatric evidence
     of Petitioner's impaired cognitive functioning
     and other disorders into their efforts to
     suppress Petitioner's statements or have his
     convictions overturned. Counsel failed to
     adequately litigate the suppression of
     Petitioner's statements to police, and other
     items of physical and testimonial evidence which
     were then improperly admitted and denied
     Petitioner a fair trial and reliable sentencing;

                        ***

(h)  Counsel failed to adequately move for appropriate
     testing of Petitioner's competence to stand trial
     through a trial on the issue of his competency.
     Counsel also failed to have Petitioner
     appropriately evaluated for competency to stand
     trial at the time that Petitioner was
     decompensating and suicidal pre-trial by an
     independent defense expert who was familiar with
     his psychiatric and social histories;

                        ***

(m)  Counsel unreasonably failed to present witnesses
     who could have strongly supported a guilty but
     mentally ill plea, or a defense of not guilty by
     reason of insanity, at the guilt-innocence phase,
     and instead presented them only at sentencing,
     after it could not be considered by the jury;

                        ***

(o)   Counsel failed to conduct an adequate examination
      of potential jurors with regard to their
      understanding of the presumption of innocence,
      potential bias regarding the death penalty and
      other issues during voir dire in order to ensure
      Petitioner's right to a fair trial and reliable
      sentencing; failed to adequately object to the
      trial court's prohibiting counsel from conducting
      a thorough and searching voir dire; failed to
      adequately challenge the trial court's improper
      excusal of certain jurors for hardship reasons or
      because they expressed a reluctance to impose the
      death penalty; failed to adequately challenge the
      trial court's improper voir dire of potential
      jurors; failed to adequately challenge the trial
      court's refusal to excuse certain jurors for
      cause; failed to adequately challenge the
      district attorney's improper voir dire and
      improper peremptory strikes aimed at specific
      jurors; and, generally failed to adequately
      protect Petitioner's right to a jury pool and
      jury which adequately represented the community
      and which could afford Petitioner the fair trial
      and reliable sentencing to which he was entitled
      under the federal and Georgia constitutions;

                          ***

(r)   Counsel failed to adequately object to the
      prosecution's attempts to mislead the jury as to
      the law pertaining to mental illness and other
      issues, as well as improperly impeach important
      defense witnesses;

(s)   Counsel failed to adequately seek court approval
      for appropriate jury instructions, failed to
      adequately object to the court's failure to give
      requested charges, and failed to raise proper and
      timely objections to improper or inadequate
      charges given by the trial court to the jury at
      the conclusion of the guilt and sentencing phases
      of trial;

(t)  Counsel failed to adequately litigate a challenge to the state's reliance on the statutory aggravating circumstances in seeking the death sentence;

(u)  Counsel failed to present an opening statement at sentencing, and failed to appropriately appeal the court's denial of their right and request to make an opening statement;

(v)  Counsel failed to present a closing argument which adequately and meaningfully discussed the evidence and set forth reasons for the jury to impose a sentence less than death;

(w)  Counsel failed to adequately take steps to negotiate a plea agreement with the district attorney, which would have included a thorough background investigation of mitigating evidence;

(x)  Counsel failed adequately to litigate and/or preserve a challenge to lethal injection methods practiced by the Georgia Department of Corrections; and

                               ***

(z)  Counsel rendered prejudicially deficient performance at motion for new trial and on direct appeal. *See, e.g., Anders v. California,* 386 U.S. 738 (1967); *Pennsylvania v. Finney,* 481 U.S. 551 (1990); *Douglas v. California,* 372 U.S. 353 (1963); *Hooks v. Wainwright,* 775 F.2d 1433, 1437(11th Cir. 1985); *Dankerl v. Wharton,* 733 F.2d 1537 (11th Cir. 1984); *Williams v. Turpin,* 87 F.3d 1204 (11th Cir. 1996). Petitioner was entitled to have each and every error attending his trial and sentencing fully researched, raised, briefed and supported both with respect to the evidentiary record and the law. *Penson v. Ohio,* 488 U.S. 75 (1988); *Evitis v. Lucey,* 469 U.S. 387 (1985); *Laughton v. Whitley,* 905 F.2d 885 (5th Cir. 1990). Yet counsel failed to fully research, raise, brief and support with evidence the claims that could and should have been raised

> based on the errors that occurred during
> Petitioner's capital trial, including the
> ineffective assistance of trial counsel.
> Petitioner was thus denied the right to effective
> assistance of counsel in these critical stages of
> his criminal proceedings. *See Williams v. Turpin,*
> 87 F.3d 1204 (11th Cir. 1996).

(Doc. 1 at 7-13.)

Although the Court has found that Petitioner failed to properly exhaust the above claims, Petitioner's default of these claims could theoretically be excused. As stated previously, a petitioner can excuse the procedural default of his claims by showing cause and prejudice, Davila, ___ U.S. ___, 137 S. Ct. at 2064-65, or that enforcing the default would constitute a fundamental miscarriage of justice, Calderon, 523 U.S. at 559-60, 118 S. Ct. at 1493. In this case, however, Petitioner has provided no reason to excuse the default of these claims. Accordingly, the Court finds that the Court is precluded from reviewing these claims. Petitioner will not be permitted to raise these claims in his forthcoming merits brief.

## 2. Claims that are insufficiently pled

In addition to its argument that many of Petitioner's claims should be dismissed because they are procedurally defaulted, Respondent also argues that many of Petitioner's claims should be dismissed because those claims were insufficiently pled in Petitioner's initial habeas petition.

27

(Doc. 89 at 22-25.) When filing a petition pursuant to § 2254, "[h]abeas petitioners must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). Accordingly, "generalized allegations are insufficient in habeas cases." Hittson, 759 F.3d at 1265. Instead, petitioners are required to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground" in their petition. 28 U.S.C. § 2254 Rule 2(c). "In other words, habeas petitions must contain 'fact pleading as opposed to notice pleading.' " Arrington v. Warden, GDCP, CV 117-022, 2017 WL 4079405, at * 1 (S.D. Ga. Sept. 14, 2017) (quoting Hittson, 759 F.3d at 1265 (internal quotations omitted)). Courts have found that this heightened pleading requirement exists because "the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterward." Hittson, 759 F.3d at 1265 n.63 (quoting Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011)).

After careful consideration the Court finds that the following claims should be dismissed because they are insufficiently pled:

(i)   Counsel failed to adequately prepare defense
      witnesses for their testimony and to withstand
      cross-examination and failed to adequately
      prepare for the cross-examination of State
      witnesses;[5]

                         ***

(p)   Counsel failed to adequately move to suppress,
      move to redact, and object to the admission of
      evidence and testimony offered by the State
      during the guilt phase of trial, including the
      testimony of Christopher Bowen. Timely objections
      would have ensured that certain improper evidence
      was not received and considered by the jury;

(q)   Counsel failed to adequately investigate the
      circumstances surrounding the production of the
      letter turned over to the prosecution by
      Christopher Bowen and his testimony regarding
      said letter. Counsel failed to adequately cross-
      examine Christopher Bowen regarding the letter,
      particularly regarding its provenace and his role
      in its production. Counsel also failed to present
      mitigating psychological evidence addressing the
      letter's production and creation; and

                         ***

(y)   Counsel's unreasonable actions and omissions at
      the guilt-innocence phase of Petitioner's trial
      prejudiced the outcomes of both the guilt-

---

[5] In addition to being insufficiently pled, this claim is also
partially unexhausted. In his CPC application, Petitioner did
raise a challenge to the testimony of a witness named Gilbert
Cosson. (Doc. 53, Attach. 2 at 13-14.) However, Petitioner makes
no other claim in his CPC application that his trial counsel was
ineffective for failing to prepare other defense witnesses or
properly prepare for cross-examination. Accordingly, any other
claim outside of any claim related to Cosson is unexhausted and
procedurally defaulted. Petitioner will not be permitted to
proceed on his claim with respect to Cosson because that claim
has been insufficiently pled. Petitioner's vague and conclusory
allegations are insufficient, and this Court will not review
that claim in his upcoming merits brief.

> innocence and sentencing phases of trial. Had
> trial counsel performed competently at the guilt-
> innocence phase, there is a reasonable likelihood
> that "at least one juror would have struck a
> different balance" in determination the
> appropriate punishment for Petitioner. *Wiggins*,
> 539 U.S. at 536.

(Doc. 1 at 10-13.) Based on the conclusory allegations within these claims, the Court is unable to determine the nature of Petitioner's allegations.[6] With respect to claim (i), Petitioner has provided no factual basis for this Court to consider how his trial counsel may have erred in preparing witnesses at trial. Petitioner has not provided the name of any witness or how the lack of preparedness of any witness affected the outcome of his trial. With respect to claim (y), Petitioner has provided absolutely no context for this claim. In the Court's view, this claim is a conclusory summary of Petitioner's overall complaint that his trial counsel was ineffective. Because Petitioner failed to support this claim with any specific error, the Court will not allow this claim to proceed as a catch-all claim.

In addition, claims (p) and (q) are also insufficiently pled. In these claims, Petitioner does provide a specific reference to a witness at trial, Christopher Bowen, and the

---

[6] In addition, it is likely that many of Petitioner's claims that were found to be unexhausted are also insufficiently pled. Because the Court found those claims to be unexhausted, the Court does not need to consider arguments that some of the claims were also insufficiently pled.

alleged errors his trial counsel made with respect to Bowen's testimony about a letter written by Petitioner. While Petitioner does allege that his trial counsel errored by failing to investigatw how the letter in question was made, declining to cross-examine Bowen as to how the letter was made and neglecting to present "mitigating psychological evidence addressing the letter's production," Petitioner has provided no other factual basis for this Court's consideration. (Doc. 1 at 11-12.) From Petitioner's allegations the Court is unable to assess what information the letter contains, how Petitioner's counsel failed to properly cross-examine Bowen, or even what Petitioner means by the potential "psychological evidence" related the letter's creation. Most importantly, Petitioner has failed to provide any allegation as to how this evidence impacted his trial or the jury's consideration of his case. Without any basis for how trial counsels' errors impacted his trial or sentencing, Petitioner's allegations are incomplete. Accordingly, the Court will not allow Petitioner to brief these claims.

### 3. Claims properly before the Court

Although many of Petitioner's ineffective assistance of counsel claims are either procedurally defaulted or insufficiently pled, the Court does find that the following claims are properly before the Court:

(a)    Trial Counsel failed to conduct an adequate pretrial investigation into the State's case and defenses available to Petitioner, including his psychological, medical and psychiatric defenses affecting Petitioner's mental state before, during and after his participation in the murders for which he was charged;

* * *

(e)    Trial counsel failed to make timely requests for investigative assistance and, once such assistance had been secured, failed to utilize and supervise each assistance to provide adequate investigative support of the chosen defense strategies at trial and sentencing, particularly with regard to Petitioner's mental illness and mitigation defenses. Counsel also failed to adequately utilize or supervise co-counsel as an investigator in these ways;

(f)    Trial Counsel failed to support their chosen defenses with an adequate pretrial investigation into Petitioner's life and background to uncover and present to the jury all readily available evidence in support of a mental illness defense and in mitigation of punishment. Counsel also failed to provide complete background information about Petitioner to any testifying expert witnesses. Such information would have served as the basis of expert mental health testimony at both phases of trial and rendered it not merely credible, but powerfully compelling. As a result, the jury failed to hear compelling mitigating evidence, including, but not limited to, detailed testimony relating to Petitioner's harrowing childhood growing up in an abusive and neglectful home; Petitioner's lifelong history of developmental delays, cognitive impairments, and struggles with major thought and mood disorders beginning in his early teen years; and, his mental deterioration in the months leading up to the crime. Counsel instead presented an incomplete picture of Petitioner's background by presenting witnesses who were unprepared and/or unequipped to present the jury with a complete

picture of Petitioner's mental health. The witnesses who were presented would have provided far more detailed and non-cumulative testimony had they been properly interviewed and prepared. Other witnesses were readily available who would have provided the jury with compelling testimony about Petitioner's life which was not cumulative. This testimony would have had critical mitigating significance because, *inter a/ia,* it would have described the deterioration of Petitioner's mental state in the time just before the crime. *See Wiggins v. Smith, supra; Rompila v. Beard, supra;*

(g) Counsel failed to adequately supervise the investigation which was performed to ensure that available leads and "red flags" were followed up and all reasonably available evidence which could have supported the defense at either phase of trial, and which would have provided rebuttal to the state's portrayal of Petitioner as malingering or otherwise not severely impaired, was appropriately developed. *Rompilla, supra;*

\*\*\*

(j) Counsel failed to present adequately-prepared expert testimony in conjunction with available evidence pertaining to Petitioner's life history and his history of psychotic symptoms and other impairments, which would have negated the state's implication that Petitioner was not mentally ill;

(k) Counsel unreasonably failed to obtain and utilize important documentation of Petitioner's traumatic upbringing and the circumstances of his home life, such as that contained in records from the Georgia Department of Family and Children's Services;

(l) Counsel unreasonably failed to obtain and utilize important documentation of Petitioner's mental decompensation in the months leading up to the crimes. Not only did counsel fail to adequately investigate this period of Petitioner's life, but what little information they did obtain about

this era was not provided to experts, presented
to the jury, and/or moved into evidence; and

\*\*\*

(n)  Counsel unreasonably failed to present the
     testimony of mental health experts in order to
     identify and explain the significance of
     mitigating factors to the jury at sentencing,
     including but not limited to: Petitioner's *in
     ulero* and early life exposure to substances and
     neglect, Petitioner's traumatic upbringing,
     impaired cognitive functioning and developmental
     delays, thought and mood disorders, physical,
     emotional and sexual abuse, and a family history
     of mental illness. Such evidence would have been
     instrumental in helping the jury to see the
     murders of Susan and Kimberly Pittman as
     "compulsive reaction rather than the product of
     cold-blooded premeditation." *Williams,* 529 U.S.
     at 398.

(Doc. 1 at 7-13.) Although Petitioner has not provided a breadth

of factual support for these claims, the Court finds that

Petitioner's claims are minimally sufficient when read as a

whole. In his allegations, Petitioner has provided some specific

factual detail as to how his trial counsel failed to present and

investigate evidence pertaining to his troubled background and

mental illness, including Petitioner's history of developmental

delays, mood disorders, and cognitive impairments. Most

importantly, Petitioner has provided a basis for how his trial

counsel's failure impacted the jury's ability to consider

mitigating evidence in its consideration of Petitioner's case.

As a whole, the Court finds that Petitioner has alleged enough

factual allegations to support his claim that his trial counsel was ineffective for failing to investigate and present evidence related to his background and mental illness. Because there is at least some factual support for these claims, the Court will allow Petitioner to brief these related claims in his forthcoming merits brief.

For clarity, the Court finds that Petitioner is permitted to brief his claims related to how his trial counsel ineffectively investigated and presented evidence of Petitioner's mental health and background. This includes Petitioner's claim that his trial counsel failed to properly use mental health experts at trial. To the extent that Petitioner attempts to extrapolate any other claim outside of the parameters laid out in this order, that claim will not be considered by the Court on the merits.

### C. Claim II: Prosecutorial Misconduct

In Claim II, Petitioner raises six different allegations of prosecutor misconduct during both phases of his trial. (Doc. 1 at 14-16.) These allegations include that the prosecution acted improperly by (1) suppressing favorable information to the defense and allowing witnesses to convey false or misleading testimony; (2) discouraging Petitioner from seeking the advice of counsel before he was subject to interrogation; (3) confining

Petitioner under conditions which negatively impacted his mental health during trial; (4) failing to disclose benefits or promises extended to State witnesses; (5) using its preemptory strikes to systematically exclude jurors on the basis of race and gender; and (6) allowing communications between court staff and jurors. (Id.) In its briefing currently before the Court, Respondent contends that this Court should not consider the merits of any of Petitioner's six claims of prosecutorial misconduct. (Doc. 89 at 27-35.) Respondent argues that all of these claims are procedurally defaulted and that Petitioner has not provided any basis to excuse that procedural default. (Id.) For his part, Petitioner only addresses his claims that the State suppressed evidence and allowed witnesses to convey false information. (Doc. 87 at 8-16.) Petitioner contends that there is cause and prejudice to excuse the procedural default of these claims. (Id.)

Before reviewing the claims discussed by Petitioner in his briefing, the Court finds that the following claims are not properly before the Court:

> 18. State agents improperly discouraged Petitioner from seeking the advice of counsel before questioning through a variety of coercive tactics. As a result, Petitioner's statements to police were obtained in violation of the Constitution. *Arizona v. Fulminante,* 499 U.S. 279, 302 (1991); *Jackson v. Denno,* 378 U.S. 368 (1964). Because the police interrogators'

original unconstitutional interrogation taints the remainder of Petitioner's statements to police. *Wong Sun v. U.S.,* 371 U.S. 471, 485 (1963); *Mapp v. Ohio,* 367 U.S. 643, 655 (1961);[7]

19. The conditions of confinement under which Petitioner was held and questioned prior to, and during, the time of trial by the State negatively affected his already compromised mental health, interfered with his relationship with trial counsel, and diminished his ability to assist with his own defense, depriving the Petitioner of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and analogous provisions of the Georgia Constitution. *Culombe v. Connecticut,* 367 U.S. 568 (1961);

\*\*\*

21. During voir dire, the prosecution improperly used its peremptory strikes to systematically exclude jurors on the basis of race and/or gender. *See Batson v. Kentucky, 476* U.S. 79 (1986); *J.E.B. v. Alabama exrel.,* 511 U.S. 127 (1994); and

22. The jury bailiff's and/or sheriff's deputies and/or other court personnel, including the judge, engaged in improper communications with jurors which deprived Petitioner of a fair trial and reliable sentencing. *See, e.g., Turner v. Louisiana,* 379 U.S. 466 (1965); *Ward v. Hall,* 592 F.3d 1144 (11th Cir. 2010).

(Doc. 1 at 15-16.) When reviewing these claims, the state habeas court found that these claims were procedurally defaulted due to Petitioner's failure to raise these claims on direct appeal. (Doc. 52, Attach. 8 at 5-6.) In addition to the procedural default of these claims, Petitioner did not raise any of these

---

[7] The numbering of these claims aligns with the system used in Petitioner's § 2254 petition. (Doc. 1.)

claims in his CPC application submitted to the Georgia Supreme Court. (Doc. 53, Attach. 2.) Accordingly, these claims are unexhausted and procedurally defaulted.

Petitioner has declined to provide any argument as to why this Court should excuse the procedural default of these claims. In his briefings, Petitioner makes no attempt to argue that he did properly raise these claims throughout the proceedings in the state courts or that the procedural default of these claims should be excused. Petitioner has effectively abandoned these claims. Without any showing of cause or prejudice to warrant the excusal of the procedural default of these claims, the Court finds that these claims are procedurally defaulted and barred from this Court's review.

In addition to being procedurally defaulted, the above claims of prosecutorial misconduct are also insufficiently pled. Petitioner's allegations with respect to the above claims are conclusory and devoid of any factual support. From the bare allegations provided in the petition, the Court is unable to assess the nature of Petitioner's complaints. For instance, Petitioner has not provided any facts to support his contention that his "conditions of confinement" negatively affected his mental health and "interfered with his relationship with trial counsel" prior to and during his trial. (Doc. 1 at 15.) From

these allegations, the Court can only guess as to what conditions of confinement Petitioner was subjected to during trial. Was Petitioner subjected to particularly harsh or unique conditions of confinement? How did these conditions affect his ability to work with his trial counsel? Petitioner has failed to sufficiently allege any facts for this Court to even begin to answer these questions. Without any factual support for this claim and the others discussed above, Petitioner's claims remain insufficiently pled. See McFarland, 512 U.S. at 856, 114 S. Ct. at 2572. Because these claims are procedurally defaulted, unexhausted, and insufficiently pled, the Court will not permit Petitioner to brief these claims on the merits.

In addition to the four claims discussed above, Petitioner also alleges two other claims of prosecutorial misconduct in his § 2254 petition. (Doc. 1 at 14-16.) Unlike the above claims that Petitioner abandoned in his briefing on procedural default, Petitioner alleges that the final two claims are properly before this Court to be considered on the merits. (Doc. 87 at 8-16.) In their entirety, these claims include:

17. The State suppressed information favorable to the defense at both phases of the trial, and the materiality of the suppressed evidence undermines confidence in the outcome of the guilt/innocence and penalty phases of Petitioner's trial, and Petitioner's direct appeal, in violation of *Brady v. Maryland,* 373 U.S. 667 (1965) and *Kyles v. Whitley,* 514 U.S. 419 (1995). The State has a

continuing obligation to disclose favorable evidence, which extends through post-conviction proceedings, and the State may be continuing to withhold favorable evidence from Petitioner. *Thomas v. Goldsmith,* 979 F.2d 746, 749-50 (9th Cir. 1992). The State took advantage of Petitioner's ignorance of the undisclosed favorable information by arguing to the jury that which it knew or should have known to be false and/or misleading. *United States v. Sanfilippo,* 564 F.2d 176, 179 (5th Cir. 1977). The State allowed its witnesses to convey a false impression to the fact- finder, and there is a reasonable likelihood that the false impression affected the fact-finder. *Giglio v. United States,* 405 U.S. 150 (1972); *Napue v. Illinois,* 360 U.S. 264 (1959). The State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that the false testimony could have affected the judgment of the trial court/fact-finder at both phases of the trial. *United States v. Agurs,* 427 U.S. 97, 103 (1976). Regardless of whether the State knew or should have known that it was presenting false evidence, the mere presentation of such evidence and the fact-finder's reliance upon such evidence at both phases of the trial deprived Petitioner of due process. *Sanders v. Sullivan,* 863 F .2d 218 (2d Cir. 1988). This pervasive state misconduct violated Petitioner's rights under Article I, § 1, 1, 2, 11, 12, 14 & 17 of the Constitution of the State of Georgia, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; and

\*\*\*

20.   The State failed to disclose benefits or promises extended to State witnesses in exchange for their testimony and allowed its witnesses to convey a false impression to the jury; and there is a reasonable likelihood that the false impression could have affected the jury's deliberations. *Giglio v. United States*, 405 U.S. 150 (1972).

(Doc. 1 at 14-16.) In his briefing, Petitioner narrows the scope of these two claims to facts surrounding the testimony of Christopher Bowen. (Doc. 87 at 8-16.) At trial, Bowen testified that he received two letters from Petitioner in which Petitioner provided details of murdering the victims in this case. (Doc. 33, Attach 1 at 16, 18-19.) Petitioner highlights two specific acts of improper conduct by the state prosecutor with respect to Bowen's testimony. (Doc. 87 at 8-16.) First, Petitioner alleges that the prosecutor acted improperly by failing to disclose that Bowen was given a substantial benefit in exchange for his cooperation with the State. (Id.) Relatedly, Petitioner contends that Bowen offered misleading testimony at trial that implied he was not given any benefit for his assistance and that the prosecutor should have corrected this inaccurate testimony. (Id.) Petitioner alleges that his counsel was unable to properly cross-examine and impeach Bowen without the information of the bargain Bowen received or the correction of Bowen's allegedly false testimony. (Id.)

In his briefing, Petitioner concedes that these claims were found to be procedurally defaulted by the state court. (Id. at 8.) Petitioner, however, argues that these claims should be considered by the Court because there is cause and prejudice

that warrants excusing the procedural default of these claims. (Id.) After careful consideration, the Court disagrees.[8]

As an initial matter, the state habeas court did find that Petitioner's claims with respect to the State's suppression of evidence and improper witness testimony was procedurally defaulted due to Petitioner's failure to raise these claims on direct appeal. (Doc. 52, Attach. 8 at 5-6.) Accordingly, this Court can only review the merits of Petitioner's claims if he can establish cause and prejudice to excuse the procedural default of these claims. When reviewing the procedural default of a claim made in the Brady context, a petitioner may be able to establish cause by showing that evidence was suppressed and prejudice by establishing the materiality of that evidence.

---

[8] In his briefing, Petitioner asserts that "this Court should refrain from ruling on these claims until he has the opportunity to brief the merits of these claims and this Court has had the opportunity to review the entire record." (Doc. 87 at 8.) To the extent that Petitioner is requesting the Court defer ruling on whether Petitioner is able to establish cause and prejudice to excuse the procedural default of this claim until Petitioner is permitted to file his merits briefing, the Court wholly rejects this request. Petitioner requested a briefing schedule that would allow Petitioner the opportunity to brief issues related to procedural default prior to briefing the merits of his claims. (Doc. 47.) This Court will not allow Petitioner to ignore his own requested scheduling order in this case. If Petitioner believed that the determination of the cause and prejudice to excuse the procedural default of his claims relied on the merits of his claims, Petitioner should not have requested the scheduling order imposed in this case. Moreover, if the merits of his claims are necessary in the determination of cause and prejudice, then Petitioner was permitted to make those arguments in his current briefing before the Court.

Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948-49 (1999). After a careful review of the record, the Court finds that Petitioner has failed to establish either requirement.

First, Petitioner has failed to establish any cause that warrants excusing the procedural default of his claims. While suppression of evidence can constitute cause to excuse the procedural default of a Brady claim, Petitioner has not shown that any information was actually suppressed in this case. Petitioner complains that the State suppressed a handwritten note that contained details of a deal that would allow Bowen to receive 18 months, a significantly shortened sentence, for his charge of burglary in exchange for his cooperation in Petitioner's murder trial. (Doc. 87 at 10-11.) Although this note may not have been provided to Petitioner, information of the deal was explicitly discussed during Bowen's guilty plea for his burglary conviction. (Doc. 39, Attach. 10 at 97-100.) During that guilty plea, the Government requested that the Court sentence Bowen to a "eighteen-month sentence to serve" despite "the State's initial recommendation . . . [of] eight years to serve" (Id. at 97.) The Government provided that the recommended sentence was due to the fact that Bowen "provided some assistance in a murder case." (Id. at 98.) Based on this

information, this Court is unable to reconcile how Petitioner's counsel could not have known that Bowen received a reduced sentence in exchange for his assistance in Petitioner's murder trial. This Court will not find that the prosecution suppressed evidence of a plea deal when a public record clearly details that Bowen provided assistance to the prosecution in exchange for a reduced sentence.

Additionally, the Court is not persuaded that the prosecution was under any obligation to clarify Bowen's testimony at trial. Courts have long held "that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' " Giglio v. United States, 405 U.S. 150, 153, 92 S. Ct. 763, 766 (1972) (quoting Mooney v. Holohan, 294 U.S. 103, 112, 55 S. Ct. 340, 342 (1935)). This principle extends even "when the State, although not soliciting false evidence allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1973). In his briefing, Petitioner asserts that the prosecution intentionally failed to correct Bowen's allegedly misleading testimony about his plea deal. (Doc. 87 at 8-16.) When reviewing the entire record, however, the Court does not find the testimony to be misleading

or that the State had an obligation to correct Bowen's testimony.

As a starting point, it is helpful to understand the context of the testimony Petitioner now challenges. The exchange at issue occurred as follows:

Prosecution: By the time you got that second letter, you were already serving a two year prison sentence?

Bowen: Yes, sir.

Prosecution: Did it help? Did it get you out sooner?

Bowen: While I was serving that sentence, no. I did all two years of that.

(Doc. 33, Attach. 1 at 21.) In context, Bowen's testimony appears to be entirely accurate. Bowen received a five-year sentence with two years to serve on an aggravated assault charge. (Id. at 17.) Bowen also received a sentence for burglary that resulted in the seventeen-month sentence, reduced in light of his assistance with Petitioner's murder trial. (Doc. 52, Attach. 6 at 17.) Accordingly, Bowen's answer was accurate when he stated that he served the entire two years of his initial sentence for aggravated assault. Moreover, there is no evidence that Bowen received any reduced sentence for providing the state with Petitioner's second letter. His testimony was neither misleading or false. The Court finds that the prosecution would not have an obligation to supplement this testimony—especially

given that Bowen provided the information related to both his sentences earlier in his testimony. (Doc. 33, Attach. 1 at 17.) The State is not under any obligation to supplement information provided by witnesses simply because Petitioner's trial counsel failed to effectively utilize the information.

While Petitioner's failure to show cause to excuse the procedural default of his claims is enough to preclude this Court's review of these claims, the Court also finds that Petitioner failed to establish any prejudice as a result of the alleged suppression of evidence and misleading testimony provided by Bowen. In his briefing, Petitioner alleges that "the defense was disarmed and unable to impeach Mr. Bowen as to potential motivations to shade the truth" due to the Government's alleged suppression of evidence and failure to correct the misleading testimony. (Doc. 87 at 12.) Petitioner contends that "disclosure of the deal with Bowen, used effectively by competent counsel, would have, with a reasonable probability, resulted in a different outcome at trial and/or sentencing." (Id. at 14.)

Despite Petitioner's general assertions, this Court is unconvinced that the ability to impeach Bowen with respect to his plea deal would have impacted the jury's determination in this case or Petitioner's death sentence. The evidence at trial

included Petitioner's admission to the crimes, the victim's tooth in Petitioner's possession, and DNA evidence linking Petitioner to the crime. O'Kelley, 284 Ga. at 759-60, 670 S.E.2d at 392-93. In addition, Bowen repeatedly testified that he provided the letters to the prosecution in hopes that he would receive a reduced sentence. (Doc. 33, Attach. 1 at 16, 21, 22, 25.) At no point did Bowen hide his motivations from the jury. (Id.) As a result, Petitioner has failed to show how the ability to impeach Bowen would have significantly undermined the weight of the evidence of Petitioner's guilt at trial or Petitioner's eligibility for the death penalty. Because Petitioner is unable to prove cause or prejudice to excuse the procedural default of his claims, Petitioner is not permitted to brief his claims on the merits.

In his briefing, Petitioner also raises a related claim that the Government permitted Bowen to offer false testimony as to how he received the first letter from Petitioner. (Doc. 87 at 15-16.) Petitioner alleges that Bowen misled the jury by implying that Petitioner was the sole creator of the letter. (Id.) Bowen revealed during state habeas proceedings, however, that he actually physically wrote the first draft of the letter as dictated by Petitioner. (Doc. 38, Attach. 8 at 125-26.) Petitioner then copied the letter into his own handwriting.

(Id.) Petitioner alleges that this evidence was never provided to the defense and would have been helpful in suppressing the letter or undermining the validity of the letter at trial. (Doc. 87 at 16.)

While Petitioner may be correct that his trial counsel would have benefited from knowing how the letter was created, Petitioner has not presented any evidence that the State suppressed this evidence. There is no indication that the State even knew about Bowen's role in the creation of the letter until the state habeas proceedings. Moreover, if Bowen wrote the letter at Petitioner's direction, Petitioner would have full knowledge of how the letter was created. Petitioner can hardly argue that he was unfairly prejudiced by the State failing to disclose information that the State may not have known, but of which Petitioner was fully aware. Accordingly, this claim also fails.

On a final note, to the extent that Petitioner alleges any claim that the State improperly suppressed evidence or elicited inaccurate information from any other witness other than Bowen, that claim is not properly before this Court. Petitioner has not offered any argument that there is cause and prejudice to excuse the procedural default of any other claim that the State suppressed evidence or elicited improper testimony. Moreover,

Petitioner did not raise any other claim about misleading testimony or suppressed evidence in his CPC application. (See Doc. 53, Attach. 2.) Accordingly, any such claim would also be unexhausted.

Ultimately, all of Petitioner's claims of prosecutorial misconduct are procedurally defaulted. Petitioner has failed to show any cause or prejudice to excuse the default of his claims. Accordingly, Petitioner will not be permitted to brief any of these claims on the merits.

D. Claim III: Juror Misconduct

In Claim III, Petitioner contends that certain misconduct by jurors during his trial "rendered [his] trial unconstitutional and thus his conviction and death sentence unreliable." (Doc. 1 at 17.) Without providing any specific information, Petitioner contends that the alleged misconduct on the part of the jurors included:

> improper consideration of matters extraneous to the trial, improper racial attitudes which infected the deliberations of the jury, false or misleading responses of jurors on voir dire, improper biases of jurors which infected their deliberations, improper exposure to the prejudicial opinions of third parties, improper communications with third parties, improper communication with jury bailiffs, improper ex parte communications with the trial judge, and improperly prejudging the guilt/innocence and penalty phases of Petitioner's trial.

(Id. at 16-17.) For its part, Respondent contends that Petitioner's claim related to any potential misconduct by juror members is procedurally defaulted and should not be considered on the merits by this Court. (Doc. 89 at 36.)

After careful consideration, this Court will not review Petitioner's claim that jurors acted improperly during the guilt-innocence or sentencing phase of his trial. As an initial matter, the state habeas court found that this claim was procedurally defaulted because Petitioner failed to raise any issues related to juror misconduct on direct appeal. (Doc. 52, Attach. 8 at 5-7.) Accordingly, Petitioner's claim is only reviewable if Petitioner first establishes cause and prejudice to excuse the default or that enforcement of the default would result in fundamental miscarriage of justice. After reviewing the parties' briefings, the Court finds that Petitioner has not offered a single argument that would warrant excusing the procedural default of this claim. In fact, Petitioner has not even mentioned Claim III in any of his briefing presently before the Court. Even worse, Petitioner does not mention Claim III in his reply brief after Respondent highlights that Petitioner has made no reference to Claim III in his initial brief on procedural default. Without any argument from Petitioner that Claim III should be considered by the Court on its merits, the

Court finds no reason to excuse the procedural default of this claim.

Additionally, the Court notes that Petitioner's allegations in Claim III are insufficiently pled. Although Petitioner lists a wide range of potential misconduct by jurors, Petitioner fails to provide a single factual allegation to support his conclusory statements about alleged juror misconduct. For instance, Petitioner has not alleged a single communication between a juror and a bailiff or court clerk that would support his conclusory allegations that there were improper communications between jurors and members of the court. Without any support for his claims, this Court will not speculate as to what Petitioner's claims could mean and will not allow Petitioner to fully brief claims that he did not properly allege in his initial petition. Because Petitioner's claim is both procedurally defaulted and insufficiently pled, Petitioner will not be permitted to brief any claim related to his conclusory allegations in Claim III in his forthcoming merits brief.

### E. Claim IV: Trial Court Error

In Claim IV, Petitioner alleges that the trial court made 21 different errors at his trial. (Doc. 1 at 17-21.) For its part, Respondent contends that the Court should not review these claims on the merits. (Doc. 89 at 39-41.) Respondent argues that

Petitioner's claims with respect to any alleged trial court error are either procedurally defaulted or insufficiently pled. (Id.) For the following reasons, the Court agrees with Respondent.

First, Petitioner's claims related to alleged errors made by the trial court are procedurally defaulted. The state habeas court found that Petitioner's claims were procedurally defaulted because he did not raise his claims on direct appeal. (Doc. 52, Attach. 8 at 7-9.) Due to Petitioner's failure to raise his claims on direct appeal, the state habeas court refused to consider the merits of these claims. (Id.) In addition, Petitioner also did not address any of these claims in his CPC application submitted to the Georgia Supreme Court. (See Doc. 53, Attach. 2.) Accordingly, the Georgia Supreme Court was never given the opportunity to review Petitioner's claims and, as a result, Petitioner's claims also remain unexhausted.

At this stage, Petitioner has provided no argument to excuse his failure to raise the alleged trial court errors on direct appeal or in his CPC application. In his initial habeas petition, Petitioner vaguely alleges that "[t]o the extent that prior counsel failed adequately to litigate and/or make timely objections with regard to the above-described claims, or to raise them adequately at motion for new trial or direct appeal,

counsel rendered prejudicially deficient performance." (Doc. 1 at 18.) Additionally, Petitioner goes on to vaguely allege that "[t]o the extent appellate counsel failed to adequately litigate trial counsel's errors at motion for new trial or appeal, appellate counsel rendered prejudicially deficient performance." (Id.)

In this Court's view, Petitioner vague allegations are insufficient to prove cause or prejudice to excuse the procedural default and lack of exhaustion of his claims. Petitioner requested the opportunity to brief the procedural default of his claims but has completely failed to demonstrate why this Court should excuse the procedural default of his claims. Petitioner's vague allegations as to ineffective assistance of counsel without any factual development of the claim or argument as to how the ineffective assistance of counsel constituted cause and prejudice to excuse the procedural default of his claim are plainly insufficient.

For the foregoing reasons the following claims are not properly before the Court and Petitioner is not permitted to brief these claims on the merits:

(a) The trial court improperly failed to strike for cause several venirepersons whose attitudes towards the death penalty would have prevented or substantially impaired their performance as jurors. The trial court erred by phrasing his voir dire questions in a manner which suggested to jurors who

gave neutral responses that they were or should be in favor of the death penalty. The court erred in its rulings on motions to challenge prospective jurors for cause based on their attitudes about the death penalty and stated biases, engaged in improper voir dire, and allowed fair and impartial jurors to be struck for cause.[6] *Witherspoon v. Illinois,* 391 U.S. 510 (1968); *Wainwright v. Will,* 469 U.S. 412 (1985). The court's errors in this regard deprived Petitioner of a fair and impartial jury, in violation of Petitioner's rights under Art. I, § I , 2, II , 12, 14 & 17 of the Constitution of the State of Georgia and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

(b) The trial court excused potential jurors or moved them to the back of the venire for improper reasons under the rubric of "hardship";

(c) The trial court erred in not following the appropriate procedures in determining the validity of Petitioner's Motion to Recuse;

(d) Petitioner's trial was rendered fundamentally unfair as a result of Petitioner's incompetence to stand trial. As the Supreme Court has held, competency to stand trial is "rudimentary" because the defendant's ability to assist his attorney and meaningfully participate in his defense, and thereby obtain a fair trial, all hinge upon it. *See Drope v. Missouri,* 420 U.S. 162, 169-73 *(1975)* (quoting *Medina v. California,* 505 U.S. 347, 453 (1992)); *Cooper v. Oklahoma,* 517 U.S. 348, 354 (1996);

(e) The trial court erred in failing to hold a trial or other appropriate hearing regarding the issue of Petitioner's competency to stand trial upon evidence that Petitioner was suicidal on the eve of trial, was given medication that made him groggy and confused, was impaired in his understanding of the proceedings against him, and was hindered in his ability to assist his defense counsel.' *Pate v. Robinson,* 383 U.S. 375, 384 (1966). The indicia of incompetency were such that, at a minimum, a full

competency trial should have been conducted instead of allowing the trial or appeal to proceed without an appropriate competency determination. *James v. Singletary,* 957 F.2d 1562, 1572 (11th Cir. 1992); *Bundy v. Dugger,* 816 F.2d 564, 567 (11th Cir. 1987); *Lindsay v. State,* 252 Ga. 493 (1984); *Phelps v. State,* 296 Ga. App. 362 (2009); *Baker v. State,* 250 Ga. 187 (1982);

(f) The trial court erred in admitting various items of prejudicial, unreliable, unsubstantiated and irrelevant evidence tendered by the State at both phases of the trial;

(g) The trial court erred in admitting Petitioner's unconstitutionally obtained statements to police;

(h) The trial court erred in allowing the prosecution to introduce improper, unreliable and irrelevant evidence in aggravation at the guilt-innocence phase of the trial, as well as at sentencing;

(i) The trial court erred by allowing the prosecution to submit evidence to the jury of which the defense had not been provided adequate notice and which had been concealed from the defense;

(j) The trial court violated Petitioner' s right to a fair trial by failing to curtail the improper and prejudicial arguments made by the prosecution;

(k) The trial court improperly admitted non-probative and prejudicial evidence over proper objections;

(l) The trial court improperly failed to allow admissible evidence into the record;

(m) The trial court erred in failing to require the State to disclose certain items of evidence or witnesses in a timely manner so as to afford the defense an opportunity to conduct an adequate investigation;

(n) The trial court erred in failing to require the State to disclose certain items of evidence of an exculpatory or impeaching nature to the defense;

(o) The trial court erred in requiring counsel for Petitioner to turn over their evidence prior to the sentencing phase;

(p) The trial court erred by improperly limiting opening statements and closing argument, as well as the cross-examination and direct examination of witnesses in both the guilt-innocence and penalty phases of trial;

(q) The trial court improperly precluded the defense from giving an opening statement at the beginning of the sentencing phase of Petitioner's trial;

(r) The trial court failed to ensure that Petitioner received a fair and unbiased sentencing trial by allowing Mr. Petitioner's to appear before the jury dressed in his jail uniform;

(s) The trial court failed to provide adequate funding and time to allow trial counsel to marshal a defense;

(t) The trial court issued erroneous Jury instructions that prejudiced the Petitioner at the guilt-innocence and penalty phases of trial; and

(u) The trial court made other improper rulings, failed to maintain an impartial judicial demeanor, and otherwise conducted the trial in such a way as to deprive Petitioner of a fair trial and reliable sentencing, in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments and analogous provisions of the Georgia Constitution.

(Doc. 1 at 18-21.)

In addition, to Petitioner's failure to raise these claims on direct appeal or in his CPC application, the Court also notes that many of Petitioner's claims would fail due to Petitioner's failure to sufficiently plead these claims. As discussed

previously, § 2254 petitions are subject to heightened pleading standard and petitioners are expected to develop the factual basis for their claims within their petition. Here, Petitioner has plainly failed to comply with this directive. For example, Petitioner's claim that the "trial court improperly admitted non-probative and prejudicial evidence over proper objections" (Doc. 1 at 20) is devoid of any factual basis. Petitioner has not provided what evidence he thinks was improperly admitted at trial or how that evidence impacted the outcome of the guilt-innocence or sentencing phases of his trial. This Court is unable to assess the merits of Petitioner's claims from his conclusory allegations.

On a final note, the Court pauses to discuss two particular claims that the parties specifically address in their briefing: (1) the claim that the trial court failed to strike for causes "prospective jurors Gisela Martin, Earl Carter, Amy Lanier, Thomas Biskup, James Hopkins, and Arthur Gnann;" (Doc. 23 at 17) and (2) the claim that the trial court denied Petitioner's right to give an opening statement prior to the sentencing phase of his state trial. In its answer to Petitioner's § 2254 petition, Respondent contends that these two specific claims were raised on direct appeal and, accordingly, are properly before this Court for review. (Id. at 17, 23.)

As an initial matter, this Court disagrees with Respondent's assessment of these claims. First, Petitioner never developed either of these claims in his CPC application submitted to the Georgia Supreme Court. (See Doc. 53, Attach. 2.) Accordingly, these claims remain unexhausted. This Court, however, acknowledges that exhaustion is not a jurisdictional requirement and can be waived in certain instances by the state. See Lee v. Upton, 5:10-cv-17, 2017 WL 4158643, *2 at n.3 (S.D. Ga. Sept. 19, 2017) (finding that the state waived any argument that the petitioner failed to exhaust his claims). In this case, it is not entirely clear whether Respondent intended to waive its exhaustion defense in this case.

Even assuming that Respondent intended to waive the exhaustion requirement with respect to these two claims, the Court would still not consider either claim on the merits because these claims are not sufficiently pled in Petitioner's § 2254 petition. Although Respondent lists the names of the jurors that should have been struck for cause, Petitioner fails to provide that information anywhere in his initial petition. Moreover, Petitioner never develops any factual basis explaining why these jury members should have been struck for cause or how the failure to strike these jury members impacted the trial. With respect to his claim that the trial court acted improperly

by not allowing defense counsel to provide an opening statement before the sentencing portion of Petitioner's trial, Petitioner has not provided any facts surrounding this ruling by the trial court. Most importantly, Petitioner has not provided any indication as to how the trial court's actions were improper or how this ruling affected his sentencing. Because these claims are insufficiently pled, Petitioner will not be permitted to brief these claims on the merits.

### F. Claim V: Conviction Relies on Misleading Evidence

In Claim V of his petition, Petitioner alleges that his sentence was "based on materially inaccurate evidence that influenced the jury's decision-making in both the guilt-innocence and sentencing phase of Petitioner's trial." (Doc. 1 at 22.) In Petitioner's view, "[t]he fact that the jury heard such evidence and was urged to consider it in their deliberations is violative of Petitioner's rights under both the Georgia and U.S. Constitutions because it renders the proceedings against him unreliable." (Id.) Despite Petitioner's allegations in his § 2254 petition, Petitioner has made no mention of this claim in his briefing currently before the Court.

After careful consideration, the Court will not permit Petitioner to brief this claim on the merits in his forthcoming

merits briefs for three reasons. First, the state court found that Petitioner's allegations with respect to misleading evidence was procedurally defaulted due to Petitioner's failure to raise this claim in his direct appeal. (Doc. 52, Attach 8 at 9.) Secondly, Petitioner did not raise any claim related to misleading evidence in his CPC application to the Georgia Supreme Court. (Doc. 53, Attach. 2.) As discussed above, this failure renders Petitioner's claim unexhausted. In his briefing, Petitioner fails to provide any reason to excuse the procedural default of his claim or his failure to properly exhaust his claim. Finally, Petitioner's claim fails because it is insufficiently pled. Petitioner has provided no factual detail in support of his claim. Petitioner has not detailed any evidence that he asserts was misleading or how that evidence impacted the jury. Because Petitioner's claim is procedurally defaulted, unexhausted, and improperly pled, Petitioner is not permitted to brief this claim in his upcoming merits brief.

### G. Claim VI: Improper Jury Instructions

In Claim VI, Petitioner raises a variety of challenges to the instructions provided to the jury at both the guilt-innocence and sentencing phases of trial. (Doc. 1 at 22-29.) Petitioner contends generally that the jury instructions "were ambiguous, insufficient, vague, and confusing, contrary to law

and the jurors' decisions based upon these instructions are unreliable." (Id. at 20.) Some of the specific problems that Petitioner identified with the lower court's instructions included:

> a. giving an improper charge on impeachment of witnesses; b. instructing the jury on inappropriate and inapplicable matters; c. incorrectly instructing the jury on the consequences of certain verdicts; d. improperly instructing the jury on charges which merged into one offense; e. improperly charging vague and essentially standardless definitions of statutory terms; f. improperly charging the jury on the offenses charged in the indictment; g. Improperly instructing the jury regarding the definition of mitigating evidence . . .

(Id.) Petitioner goes on to provide a detailed argument regarding an instruction that inadequately defined mitigation evidence and an instruction that improperly directed the jury that any verdict with respect to a sentence must be unanimous. (Id. at 25-25, 29-28.) Petitioner contends that the "erroneous and improper instructions violated Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." (Id. at 29.)

Although Petitioner has provided more factual allegations to support his claim that the jury was improperly instructed than many of his other claims, this Court is unable to review this claim at this time. In the state habeas proceedings, the court found that Petitioner's claim related to improper jury

instructions was procedurally defaulted due to Petitioner's failure to raise the claim on direct appeal. (Doc. 52-8 at 5-7.) Accordingly, this Court is not permitted to review Petitioner's claim without any showing by Petitioner that the default should be excused. Petitioner also failed to raise any claim about the instructions provided to the jury in his CPC application submitted to the Georgia Supreme Court. (Doc. 53, Attach. 2.) As discussed previously, Petitioner's failure to raise his claim in his CPC application constitutes a failure to properly exhaust his claims.

In his briefing currently before the Court, Petitioner has not made any argument that would excuse the procedural default of his claim or failure to properly exhaust his claim. In his petition, Petitioner vaguely alleges that

> [t]o the extent that Petitioner's counsel failed adequately to preserve objections to the trial court's charge or effectively litigate these issues on appeal, Petitioner's counsel rendered ineffective assistance. Had counsel performed reasonably, there is a reasonable probability that the outcome of the guilt/innocence phase of trial would have been different.

(Doc. 1 at 29.) Despite his efforts, Petitioner's conclusory allegations that his trial counsel was ineffective for failing to challenge the jury instructions in this case are insufficient to establish cause or prejudice to warrant excusing the procedural default of his claim. Because Petitioner has failed

to provide a sufficient basis to excuse the procedural default of his claim or his failure to properly exhaust his claim, the Court will not review this claim on the merits.

## H. Claim IX: Challenge to the Execution of the Mentally Ill

As his final challenge, Petitioner contends that his "death sentence should be set aside on the grounds that Petitioner is mentally ill and thus should not be subject to execution." (Doc. 1 at 42.) In Petitioner's view, "[i]t is now time for courts to recognize that the Eighth Amendment further protects from execution individuals who suffered from mental illness at the time of their capital offense." (Id.) Despite Petitioner's allegations, this Court will not review the merits of Petitioner's claim.

As an initial matter, the state habeas court found that Petitioner's claim regarding the constitutionality of executing a person with a mental illness was procedurally defaulted. (Doc. 52, Attach. 8 at 9.) The court found that Petitioner procedurally defaulted this claim by failing to raise his claim on direct appeal. (Id. at 5.) In addition to the procedural default of his claim, Petitioner's claim is also unexhausted. Petitioner suggests in his briefing that he properly exhausted his claim because he "presented ample evidence to the state

habeas court regarding his mental illness." (Doc. 87 at 21.) While Petitioner's assertion that he presented evidence of this claim in the state habeas court may be accurate, Petitioner's claim remains unexhausted because he did not raise the claim in his CPC application to the Georgia Supreme Court. (See Doc. 53, Attach. 2.) This Court has already explained that raising a claim in a CPC application to the Georgia Supreme Court is necessary to properly exhaust a claim. As a result, Petitioner's claim is both procedurally defaulted and unexhausted.

As it stands, Petitioner is requesting that this Court review a claim that has never been properly submitted to the Georgia Supreme Court for consideration. While the Court is hesitant to consider such a claim for the first time on federal review, Petitioner maintains that a failure by this Court to consider his claim would constitute a fundamental miscarriage of justice. (Doc. 87 at 22-23.) After careful consideration of Petitioner's argument, the Court disagrees.

In order to prove that a court's failure to consider a procedurally defaulted claim would constitute a fundamental miscarriage of justice, a petitioner is required to show that no reasonable jury would have found the petitioner eligible for the death penalty in light of the new evidence. See Calderon, 523 U.S. at 559-60, 118 S. Ct. at 1493 (citing Sawyer, 505 U.S. at

64

348, 112 S. Ct. at 2523). In this case, Petitioner has not shown that evidence of his mental illness would have changed his eligibility for the death penalty. While Petitioner may contend that the law should prevent the execution of those with a known mental illness, there is no current legal authority supporting Petitioner's position. Even if evidence of his mental illness had been more thoroughly developed at trial, the jury still could have found Petitioner eligible for the death penalty. In this case, the jury found beyond a reasonable doubt the existence of six statutory aggravating factors that made Petitioner eligible for the death penalty. (Doc. 16, Attach. 19 at 2-5.) There is no showing that evidence of Petitioner's mental illness would have affected the jury's findings with respect to any of these aggravating factors. With no indication that evidence of any mental illness would have changed the jury's findings as to the aggravating factors and no case law to support that those with mental illnesses are ineligible for the death penalty, Petitioner is unable to show that this Court's failure to review his procedurally defaulted claim would constitute a fundamental miscarriage of justice. Accordingly, this Court is precluded from reviewing the merits of Petitioner's claim. Petitioner will not be permitted to brief this claim in his upcoming merits brief.

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner will not be permitted to brief any claim raised in Claim II, Claim III, Claim IV, Claim V, Claim VI, Claim VII, Claim VIII or Claim IX. In addition, the Court finds that Petitioner will not be permitted to brief many of his claims related to alleged errors made by his trial counsel. Petitioner will be permitted to brief claims related only to his trial counsel's failure to investigate and present mitigation evidence related to Petitioner's background and mental health. Any claims outside of the scope of these claims will not be considered by this Court.

SO ORDERED this 2ND day of April 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA